## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DUNIA C. MENDEZ VALLEJO, et al.,

               Plaintiffs,

    v.

UNITED STATES OF AMERICA,

               Defendant.

Civil Action No. 20-12664 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendant United States of America's Motion to Dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction. (ECF No. 5.) Plaintiffs Dunia C. Mendez Vallejo ("Mendez Vallejo") and Jonathan Thomas Yazinski's (collectively, "Plaintiffs") filed a Cross-Motion to set aside the certification of scope of employment and to resubstitute the Government's employee as the defendant, (ECF No. 6), which Defendant opposed, (ECF No. 9). Plaintiffs have declined to file a reply. (ECF No. 10.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss is granted and Plaintiffs' Cross-Motion is denied.

### I.    BACKGROUND

Plaintiffs' allegations arise from the Government's investigation into whether Mendez Vallejo was subject to the two-year home residency requirement under Section 212(e) of the Immigration and Nationality Act. Mendez Vallejo applied for naturalization on August 8, 2017.

(Cross-Motion 1, ECF No. 6.) On January 31, 2018, Mendez Vallejo had a naturalization interview with Katherine Prunczik ("Prunczik"), a naturalization officer working for United States Citizenship and Immigration Services ("USCIS"). (*Id.*) Plaintiffs allege that during this interview, Prunczik "pointed to Question 11 about the Two Year Residency Requirement" (the "INA § 212(e) Question") on Mendez Vallejo's Form I-485, Application to Register Permanent Residence or Adjust Status, and noted that this question had been circled by the officer who adjudicated Mendez Vallejo's Form I-485 in 2011. (Compl. ¶ 21, Ex. A to Notice of Removal, ECF No. 1-1.) Plaintiffs further allege that Prunczik "said that there must have been something that satisfied" this officer "since he crossed through [the INA § 212(e) Question] and the circle around it, [which indicated] that he was satisfied." (*Id.* ¶ 22.)

After this interview, Prunczik issued a Form N-14 Continuance ("First Request") to Mendez Vallejo on February 6, 2018, requesting additional information about whether Mendez Vallejo's J-1 Visas were subject to INA § 212(e) and specifically requesting that Mendez Vallejo submit copies of all DS-2019 and IAP-66 forms[1] that were ever issued to her. (*Id.* ¶ 23.) In response, Mendez Vallejo provided an explanation for why she was not subject to INA § 212(e) and noted that the officer who adjudicated her Form I-485 in 2011 had investigated this issue and had been satisfied by it. (*Id.* ¶ 24.) In support, Mendez Vallejo pointed out in her response that the relevant question on her Form I-485, the INA § 212(e) Question, was circled and had a check-mark through it. (Def.'s Combined Reply 7, ECF No. 9.) Mendez Vallejo was unable to locate and did not provide any IAP-66 forms in response. (Compl. ¶ 24.)

---

[1] Form DS-2019, formerly known as IAP-66, is a document issued by the Department of State titled "Certificate of Eligibility for Exchange Visitor (J-1) Status," which identifies the exchange visitor and the exchange visitor's designated sponsor and provides a description of the exchange visitor's program." (Def.'s Combined Reply 7.)

After review of Mendez Vallejo's response to the First Request, Prunczik issued a second Form N-14 Continuance ("Second Request") on July 23, 2018. (*Id.* ¶ 25.) In the Second Request, Prunczik stated that it was she, as the officer that conducted the naturalization interview, who had "circled the [INA § 212(e) Question]" because "this issue is now being evaluated to determine if [Mendez Vallejo] properly adjusted [her] status." (Def.'s Combined Reply 7.) Prunczik disputed that the officer who adjudicated Mendez Vallejo's Form I-485 in 2011 had made the markings at issue and instead asserted that because of Mendez Vallejo's response to the INA § 212(e) Question in 2011, that officer "did not appear to have the information about [Mendez Vallejo's] three J-1 Visas" and "was unaware of the fact that [Mendez Vallejo was] ever issued J- 1 Visas, subject to 212(e)." (*Id.* at 8; Ex. 4 to Decl. to Def.'s Combined Reply *20,[2] ECF No. 9-1.)

This language from the Second Request forms the basis of Plaintiffs' allegations. Plaintiffs allege "[b]oth of these statements are lies." (Compl. ¶ 26.) Plaintiffs allege Prunczik made material misrepresentations by: (1) "insist[ing] that she herself circled [the INA § 212(e) Question] in 2018, even though she said otherwise at the naturalization interview on January 31, 2018," and (2) "assert[ing] that the [officer who adjudicated Mendez Vallejo's Form I-485 in 2011] was not aware of Ms. Mendez Vallejo's J-1 visas." (Cross-Motion 2.) According to Plaintiffs, "Prunczik was interested in having this case result in a denial, and she was willing to lie to get it." (Compl. ¶ 28.)

Mendez Vallejo's naturalization application was denied by another officer on April 4, 2019; Prunczik had previously left the Mount Laurel Field Office for another position within the agency. (*Id.* ¶ 80; Def.'s Combined Reply 9.) Mendez Vallejo requested a hearing on the denial of her naturalization application, which was held on July 22, 2019, at which time the officer presiding

---

[2] Page numbers preceded by an asterisk refer to the page number on the ECF header.

over the hearing approved Mendez Vallejo's application. (Compl. ¶¶ 34–35.) Mendez Vallejo was ultimately sworn in as a United States citizen on August 5, 2019. (*Id.* ¶ 35.)

On May 4, 2020, Plaintiffs filed their Complaint in the Superior Court of New Jersey, Law Division, Special Civil Part, Mercer County. (*See* Compl.) Plaintiffs named Prunczik as a defendant in her individual capacity. (*Id.* ¶¶ 1–2, 8.) Plaintiffs assert a cause of action against Prunczik for common-law fraud under New Jersey law. (*Id.* ¶ 44.) They allege Prunczik committed fraud by making intentional misrepresentations in the Second Request during the adjudication of Mendez Vallejo's naturalization application, which led to another USCIS officer denying her application. (*See generally id.*)

After Plaintiffs filed their Complaint in New Jersey state court, the United States substituted itself as Defendant and removed the case to this Court pursuant to 28 U.S.C. § 2679(d)(2) on September 14, 2020. (Notice of Removal, ECF No. 1.) The Notice of Removal attached a Scope of Employment Certification by the United States Attorney's Office. The certification averred that Prunczik "was an employee of the United States of America acting in the scope of her federal employment as an Immigration Service Officer for [USCIS] at the time of the incidents out of which the [P]laintiffs' claims arose." (Certif. of Scope of Employment ("Westfall Certification"), Ex. B to Notice of Removal, ECF No. 1-2.)

## II.  LEGAL ISSUES

Defendant brings both facial and factual challenges to the Court's subject matter jurisdiction. Defendant asserts that the Court lacks jurisdiction over Plaintiffs' tort claim because Plaintiffs did not meet the Federal Tort Claims Act's ("FTCA") mandatory exhaustion requirement before filing this lawsuit. (Def.'s Moving Br. 7–8.) Defendant also makes facial challenges to the Court's jurisdiction based on the substance of Plaintiffs' fraud claim (*Id.* at 9–13.)

4

The FTCA constitutes an explicit, but limited, waiver of sovereign immunity for certain actions against the United States in federal district court. 28 U.S.C. § 1346(b)(1). The United States waives sovereign immunity under the FTCA only where the plaintiff has "first presented the claim to the appropriate Federal agency" and the claim has been "finally denied by the agency in writing." 28 U.S.C. § 2675(a). "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). The plaintiff bears the burden of proving exhaustion of administrative remedies. *Medina v. City of Phila.*, 219 F. App'x 169, 171–72 (3d Cir. 2007). Failure to exhaust administrative remedies warrants dismissal for lack of subject matter jurisdiction. *McNeil*, 508 U.S. at 113.

Here, Plaintiffs affirmatively acknowledge they did not present an administrative tort claim to USCIS, the applicable federal agency, before filing their Complaint. (Cross-Motion 17, n.3.) Instead, Plaintiffs request judicial review of the Westfall Certification from the United States Attorney's Office affirming that Prunczik was an employee of the United States of America acting within the scope of her federal employment at the time of the incidents out of which the [P]laintiffs' claims arose. (*See generally Id.*; *id.* at 5.)

In 1988, Congress clarified the terms of the United States' waiver of sovereign immunity under the FTCA through the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act"). The Westfall Act provides absolute immunity to federal employees in the wake of *Westfall v. Erwin*, 484 U.S. 292 (1988), by making suit under the FTCA against the United States the exclusive remedy for negligent or wrongful acts by federal employees committed within the scope of employment. *Lomando v. United States*, 667 F.3d 363, 375 (3d Cir. 2011). The statute states that:

> Upon certification by the Attorney General that the defendant employee
> was acting within the scope of his office or employment at the time of the incident

5

out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(d)(2).

The Certification by the United States Attorney's Office in support of removal stated that Prunczik "was an employee of the United States of America acting in the scope of her federal employment as an Immigration Service Officer for [USCIS] at the time of the incidents out of which the [P]laintiffs' claims arose." (Westfall Certification, *2–3.) Plaintiffs challenge the substitution of the United States and assert that Prunczik was not acting within the scope of her federal employment when she issued the Second Request. (Cross-Motion 5.) Plaintiffs concede that if the Court determines that Prunczik was acting within the scope of her employment, then this case should be dismissed, as Plaintiffs "have no case against the United States of America." (*Id.*) Plaintiffs correctly conclude that the Motion to Dismiss before the Court "hinges completely on the review of the certification of scope of employment." (*Id.* at 6.)

## III.   LEGAL STANDARD

The Third Circuit has recognized that a court can rule on *Westfall* certifications without conducting discovery or a hearing and may resolve the scope of employment issue as a matter of law. *Schrob v. Catterson*, 967 F.2d 929, 935–36 (3d Cir. 1992). Determining whether the government employee was acting within the scope of her employment requires a court to consult the relevant state law of respondeat superior. *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000). A plaintiff may rebut a *Westfall* Certification by pleading facts sufficient to establish that the employee acted outside the scope of her employment. *Sharratt v. Murtha*, 437 F. App'x 167,

6

172 (3d Cir. 2011). "Where a Plaintiff . . . challenges the propriety of the United States's substitution as a Defendant in an FTCA case, the scope of employment certification filed by the Government in support of removal is '*prima facie* evidence' that [the federal employee's] conduct 'occurred within the scope of [her] employment.'" *Arostegui v. Plotzker*, No. 13–06528, 2014 WL 346543, at \*2 (D.N.J. Jan. 29, 2014) (citing *Schrob*, 967 F.2d at 934, 936). It is Plaintiffs' burden to come forward with specific facts rebutting the Westfall Certification. *Id.*; *see Schrob*, 967 F.2d at 936.

"Scope of employment is a commonly cited principle, but its contours are not easily defined. . . . It refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." *Carter v. Reynolds*, 815 A.2d 460, 465 (N.J. 2003) (citations omitted). "The scope of employment standard, concededly imprecise, is a formula designed to delineate generally which unauthorized acts of the servant can be charged to the master." *Di Cosala v. Kay*, 450 A.2d 508, 513 (N.J. 1982). The question of whether an individual acted within or outside the scope of employment often arises in the context of intentional wrongful acts of the individual employee. "A number of cases in which a plaintiff alleged intentional or reckless assault have found that the employee nevertheless was or could be found to have acted within the scope of his employment although he exceeded lawful or proper means in carrying out his duties." *Vosough v. Kierce*, 97 A.3d 1150, 1160 (N.J Super. Ct. App. Div. 2014) (collecting cases). "The fact that the employee's conduct is intentional and wrongful does not in itself take it outside the scope of his employment." *Id.* at 1161; *see, e.g.*, *Gibson v. Kennedy*, 128 A.2d 480 (N.J. 1957) (train conductor who assaulted passenger for failing to get off train was acting within the scope of his employment); *Mason v. Sportsman's*

7

*Pub*, 702 A.2d 1301 (N.J. Super. Ct. App. Div. 1997) (tavern's bouncer was acting within the scope of his employment when his physical ejection of a patron resulted in injury to the patron); *Schisano v. Brickseal Refractory Co.*, 162 A.2d 904 (N.J. Super. Ct. App. Div. 1960) (employee who punched decedent during an argument about parking in his employer's private lot, causing him to suffer a fatal heart attack, could be found to have been acting within the scope of his employment).

New Jersey law provides that an employee acts within the scope of employment if the action (1) is of the kind that the servant is employed to perform; (2) occurs substantially within the authorized time and space limits; and (3) is actuated, at least in part, by a purpose to serve the master. *Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 963 (1994); *Di Cosala*, 450 A.2d at 508. If all three criteria are satisfied, the employer's liability "may extend even to intentional or criminal acts committed by the servant" and even to acts not authorized by the employer "if they are clearly incidental to the master's business." *See Brumfield*, 232 F.3d at 381 (citation omitted); *Kielty v. Ali*, No. 07–5719, 2008 WL 2783340, at *4 (July 16, 2008).[3]

---

[3] Plaintiffs argue that *respondeat superior* is not applicable because under New Jersey law, "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." (Cross-Motion 11.) Plaintiffs' discussion of public entity liability, however, is inapplicable here. (*Id.* at 11–12 (citing *inter alia Grieco v. Lanigan*, No. 15-7881, 2017 WL 384689 (D.N.J. Jan. 27, 2017); *Hoag v. Brown*, 397 N.J. Super. 34 (App. Div. 2007)).) Rather, "the United States is liable only to the extent that in the same circumstances the applicable local law would hold 'a *private person*' responsible. Congress reiterated that precept in 28 U.S.C. § 2674, which provides that the United States is answerable under the FTCA 'in the same manner and to the same extent as a private individual under like circumstances.'" *Lomando*, 667 F.3d at 373 (citing 28 U.S.C. § 1346(b)(1) (emphasis added); *see United States v. Olson*, 546 U.S. 43, 46 (2005) ("Our cases have consistently adhered to this 'private person' standard.")). "In sum, the FTCA provides that the United States will be liable to the extent that a private employer would be liable in similar circumstances in the same locality." *Lomando*, 667 F.3d at 374.

8

## IV. DISCUSSION

Plaintiffs argue that "[t]he only wrongful act that [Prunczik] committed was willfully issuing the [Second Request] to [Mendez Vallejo] on July 23, 2018, that contained a misrepresentation." (Cross-Motion 10.) On the other hand, Plaintiffs acknowledge that Prunczik's "actions with respect to [Mendez Vallejo's] immigration history prior to March 2018 [were] within the scope of her employment." (*Id.*) Plaintiffs argue that even under the theory of respondeat superior, Prunczik, in issuing the Second Request, "acted contrary to the rules of her office and agency and the federal statutes that govern them, and consistent with past Third Circuit decision, this tort was not the kind of action she was employed to perform." (*Id.* at 7.) The crux of Plaintiffs' argument is that "[b]ecause lying in [a Form N-14 Continuance] violates USCIS regulations," (*id.* at 14), Prunczik's issuance of the Second Request was not within the scope of her employment. Plaintiffs cite to USCIS guidelines, perjury laws, and the Immigration and Nationality Act in support. (*Id.* at 15–16.)

Plaintiffs' arguments are misplaced. In reviewing whether an employee's action was within her scope of employment, "[a court] do[es] not look to a plaintiff's *claims*," i.e., misrepresentation or fraud; "rather, [a reviewing court] look[s] to the employee's conduct 'at the time of the incident out of which the claim arose.'" *Borawski v. Henderson*, 265 F. Supp. 2d 475, 482 (D.N.J. 2003) (citing 28 U.S.C. § 2679(d)(1)). As this Court pointed out in *Borawski* in response to similar scope-of-employment arguments, under Plaintiffs' analysis here, "the Westfall Act would be practically inconsequential, because intentional torts and negligence rarely, if ever, (1) constitute an employee's typical duties; or (2) serve to benefit the Government as employer." *Id.* at n.7. Because courts look to the general scope of employment, not the tortious nature of the act, it is well settled that intentional torts may fall within the scope of employment. *See id.* at 475 (finding that supervisor who allegedly gained access to employee's medical records and published defamatory

9

statements in the workplace about said employee was acting within the scope of her employment); *see also Alexander v. Riga*, 208 F.3d 419, 432–33 & n. 9 (3d Cir. 2000) (racial discrimination within employment scope); *Donio v. United States*, 746 F. Supp. 500, 506 (D.N.J. 1990) (defamatory statements within employment scope); *Abbamont*, 650 A.2d at 958 (retaliatory conduct within employment scope).

Accordingly, the Court examines Prunczik's conduct—issuing the Second Request—not the allegedly tortious nature of the act, for purposes of determining scope of employment. Prunczik's issuance of the Second Request, therefore, is indistinguishable in kind from her previous activities, including conducting Mendez Vallejo's naturalization interview and issuing the First Request, conduct which Plaintiffs acknowledge did fall within Prunczik's scope of employment. (Cross-Motion 10.) USCIS officers review applications for immigration benefits and routinely issue continuances and requests. Even construing Plaintiffs' allegations of misrepresentation as true, Prunczik's issuance of the Second Request was still "so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that [it] may be regarded as [a] method[], even though [a] quite improper one[], of carrying out the objectives of the employment." *Di Cosala*, 450 A.2d at 513. Prunczik's issuance of the Second Request was squarely the kind of action that she was employed to perform.

Plaintiffs' assertion that any conduct "contrary to departmental regulations is sufficient to fail [the scope of employment] test" is not supported. (Cross-Motion 13.) In making this argument, Plaintiffs rely heavily on the Third Circuit's opinion in *CNA v. United* States, 535 F.3d 132 (3d Cir. 2008), but that case is distinguishable here. There, an Army recruiter housed a recruit in his home contrary to Army regulations and in violation of a direct order from a supervisor. *CNA*, 535 F.3d at 138. The Third Circuit determined that the first two factors of the scope of employment

10

test were not met because (1) "lodging recruits in one's home violates Army recruiting regulations, [so] that action is not of the kind that Army employees are to perform," and (2) the Army recruit was "specifically forb[idden]" to allow the recruit to stay at his home and, therefore, his conduct "occurred at an unauthorized place." *Id.* at 147. In *CNA*, the Army recruiter's conduct, housing a recruit in his own home, was easily divorced from the kind of conduct an Army recruiter was employed to perform. As discussed above, Prunczik's issuance of the Second Request, even with an allegedly knowing misrepresentation, was the kind of action that USCIS employees perform and "clearly incidental to the master's business" of adjudicating applications for immigration benefits. *Brumfield*, 232 F.3d at 381. Plaintiffs' broad analogy between *CNA* and the present facts, therefore, does not hold, and would instead make the Westfall Act "practically inconsequential." *Borawski*, 265 F. Supp. 2d at 482 n.7; *see Di Cosala*, 450 A.2d at 508 ("The scope of employment standard, concededly imprecise, is a formula designed to delineate generally *which unauthorized acts of the servant* can be charged to the master.") (emphasis added).

Further, Prunczik issued the Second Request from her workplace while serving in her role at USCIS in its Mount Laurel Field Office, and Plaintiffs do not allege any other contact or communication with Prunczik. (*See* Def.'s Combined Reply 27.) As Plaintiffs concede, the second prong of the scope of employment test—whether the conduct occurred within authorized time and space limits—is therefore satisfied. (*See* Cross-Motion 13.)

Finally, Plaintiffs have not alleged any facts to suggest that the Second Request was motivated by any purpose other than to serve her employer. Plaintiffs make only a conclusory allegation that "Prunczik was interested in having this case result in a denial, and she was willing to lie to get it." (Compl. ¶ 28.) Defendant counters that the "key inquiry is whether, despite any alleged improper motive for the actions, the employee acted at least in part to serve the purposes

11

of the employer." (Def.'s Combined Reply 28 (citing Restatement (Second) of Agency § 228 comment a).) Defendant argues "Prunczik took actions required of [Immigration Service Officers] in support of USCIS's responsibility to adjudicate applications for immigration benefits." (*Id.* at 3.) Defendant also points out that Prunczik did not deny Mendez Vallejo's application, although she could have, and instead issued the Second Request to allow Mendez Vallejo additional time to correct her application. (*Id.* at 27.) The record is clear that Prunczik's conduct was motivated at least in part to serve her employer's mission to adjudicate applications for immigration benefits, including Mendez Vallejo's naturalization application, and Plaintiffs' conclusory allegations are insufficient to counter this. Because these three factors are met, the Court finds that Prunczik was acting within the scope of her employment at all times relevant here.

## V.    CONCLUSION

Upon the foregoing judicial review of the Westfall Certification in this case, the Court finds that Prunczik was an employee of the United States of America acting within the scope of her federal employment at the time of the incidents out of which Plaintiffs' claims arose. Consequently, the substitution of the United States as Defendant was appropriate. As Plaintiffs failed to meet FTCA's mandatory exhaustion requirement before filing this suit, the Court lacks subject-matter jurisdiction over this action against Defendant United States. The Court, accordingly, grants Defendant's Motion to Dismiss for lack of subject-matter jurisdiction and denies Plaintiffs' Cross-Motion to set aside the certification of scope of employment and to resubstitute the Government's employee as the defendant. The Complaint is dismissed without prejudice. The Court will enter an Order consistent with this Memorandum Opinion.

Meshipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

12